**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 05-cv-959-RPM-CBS

---

CYNTHIA ROBERTSON,

Plaintiff,

v.

DOUGLAS DARR, SHERIFF OF THE ADAMS COUNTY SHERIFF'S DEPARTMENT, in his official capacity, and
CRAIG COLEMAN, CAPTAIN WITH THE ADAMS COUNTY SHERIFF'S DEPARTMENT, both in his individual and official capacities,

Defendants.

---

**AMENDED COMPLAINT AND DEMAND FOR JURY**

---

COMES NOW PLAINTIFF, Cynthia Robertson ("Robertson"), by and through her attorneys, BRUNO, BRUNO & COLIN, P.C., by Marc F. Colin and Michael T. Lowe, and for her Amended Complaint against Defendants, states, avers and alleges the following:

**I. JURISDICTION AND VENUE**

1.     This is an action for declaratory and injunctive relief and damages pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and 42 U.S.C. § 1983, for the deprivation of rights under the provisions of these statutes and to redress Defendants' discriminatory, retaliatory, and other unlawful acts. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, § 1343, 42 U.S.C. § 1983 and § 2000(e)-5(f)(3).

Page 1 of 32

**EXHIBIT**

tabbies®

1

2.      Venue is proper in this Court because the employment practices complained of herein occurred within the District of Colorado.

## II. PARTIES

3.      Robertson is a female citizen of the United States and the State of Colorado. She is and has been an employee of the Adams County Sheriff's Department since 1990, during which time period all relevant events occurred. Defendant Sheriff Douglass Darr is the Elected Sheriff of Adams County, Colorado and in such capacity, is responsible for the operation and administration of the Adams County Sheriff's Department, as well as the official acts of its deputies, supervisors, and Undersheriff. Sheriff Darr was and is the individual with final policy making authority at the Adams County Sheriff's Department with regard to its promotional practices, duty assignment policies and investigation of complaints of gender discrimination and retaliation. Sheriff Darr had and has, final decision making authority to direct that an investigation of allegations of gender bias, discrimination and/or retaliation be undertaken and to take action based upon the outcome of such investigation. Sheriff Darr was acting under color of law in connection with all matters addressed herein. Captain Craig Coleman was and is, at all times relevant hereto, a supervisor of the Adams County Sheriff's Department and acting within the course and scope of such employment and under color of law in connection with all matters more particularly described hereinbelow.

4.      The Adams County Sheriff's Department is a governmental entity that provides law enforcement and detention services for the citizens of Adams County. At the time of the incidents complained of hereinbelow, the Adams County Sheriff's Department employed approximately 275 sworn deputies, approximately 30 of whom are females. Currently, the Adams County Sheriff's

Department employs 338 certified employees, 47 of whom are women. Of the approximately 275 sworn positions at the Adams County Sheriff's Department during the period complained of, approximately 45 of such sworn positions were supervisory (Sergeant through Sheriff). However, at the time of the incidents giving rise to the within Complaint, only two (2) females held supervisory positions at the Adams County Sheriff's Department. Currently, there are four female supervisors out of 47 supervisory positions available.

### III. ADMINISTRATIVE PROCEEDINGS

5.      On December, 3, 2003, Robertson timely filed her original Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") and simultaneously with the Equal Employment Opportunity Commission ("EEOC"). In her charge, Robertson alleged gender discrimination in violation of Title VII, which began in approximately July of 2003 and continues through the date of the filing of the original and Amended Complaints in the instant action.

6.      More than 180 days has elapsed since Robertson filed her Charge of Discrimination.

7.      Defendants are employers within the meaning of C.R.S. § 24-34-401(3) as reenacted and the timeliness and all other jurisdictional requirements for pursuit of a charge of gender discrimination with the CCRD and EEOC pursuant to Title 24, Article 34, Parts 3 and 4 were complied with.

8.      On January 20, 2005, Robertson received a Determination from Wendell L. Pryor, Director of the CCRD, attached hereto and incorporated herein as **Exhibit A**. In its "Determination", the CCRD found probable cause to believe that the Defendants had failed to promote the Plaintiff to the position of Sergeant, failed to promote Plaintiff to the position of Detective, demoted Plaintiff

from the position of Lead Advisor for the Adams County Sheriff's Department Explorer Post, and

denied Plaintiff an assignment to the position of Public Information Officer, all due to her gender.

Indeed, the CCRD noted that "a sense of growing frustration [regarding gender bias at the

Adams County Sheriff's Department] has **become epidemic** among the female employees

interviewed to the extent that at least one resigned her employment due to frustration." *(emphasis*

*added)*.

9.      Upon review of the Determination from the CCRD, the EEOC elected to conduct its

own investigation.  Following such investigation, the EEOC issued its Determination dated July 14,

2005 which is attached hereto and incorporated herein as **Exhibit B.**

10.      Following the EEOC's July 14, 2005 Determination, Plaintiff requested from EEOC

a Notice of Right to Sue letter which was received on August 19, 2005 and which is attached hereto

and incorporated herein as **Exhibit C.**

11.      As discussed in paragraphs 56 through 69, following Plaintiff's filing of her original

gender bias charge, Plaintiff was subjected to a continuing course of retaliation by Defendants.  As

a result, Plaintiff filed a second complaint with the EEOC dated July 19, 2005, charging the

Defendants with retaliation.  In order to move forward with the within litigation Plaintiff made a

request to the EEOC for an immediate Notice of Right to Sue letter which was issued by the EEOC

on November 2, 2005, and is attached hereto and incorporated herein as **Exhibit D.**

## IV.  GENERAL ALLEGATIONS

12.      Plaintiff Robertson began her employment with the Adams County Sheriff's

Department on or about June 18, 1990. She was initially assigned to the Detention Facility of the Adams County Sheriff's Department. Plaintiff transferred to the Patrol Division on or about March 2, 1992. At all times relevant to the within action, Plaintiff has been employed in the position of Deputy Sheriff for the Adams County Sheriff's Department.

13.     Plaintiff became a member of the SWAT Team on or about June 21, 1993 and was assigned to the position of Negotiator. Plaintiff resigned from her position of Negotiator for the Adams County Sheriff's Department SWAT Team on September 10, 2003.

14.     Throughout Plaintiff's assignment as a Negotiator to the Adams County Sheriff's Department SWAT Team, she received regular performance evaluations, wherein she was consistently found to have met the expectations of her supervisors and in which Plaintiff's performance was consistently rated as satisfactory or better.

15.     Throughout Plaintiff's assignment to the SWAT Team, she received treatment from her Commanding Officers (excluding her immediate Supervisor) that was disparate from the manner in which her male SWAT Team counterparts were treated.

16.     An example of the disparate treatment to which the Plaintiff was subjected during her tenure as a SWAT Team Negotiator, is the SWAT Team Commander's refusal to issue Plaintiff a "long gun" despite repeated requests by the Plaintiff beginning in 2001 for the assignment of a rifle. Every male SWAT Team member was issued a "long gun" (rifle) shortly after being assigned to the SWAT Team. Each quarter, all SWAT Team members were required to qualify at the range with a "long gun" and each male member of the SWAT Team was able to practice with the rifle issued to them by the SWAT Team Commander prior to each qualification period. Each male SWAT Team

member also had a "long gun" available to him when responding to SWAT calls however, Plaintiff

was denied the assignment of a rifle despite multiple requests over a three year period, based solely

upon her gender.  Thus, each quarter when the SWAT Team was required to go to the range to

qualify with their rifles, Plaintiff, unlike her male SWAT Team counterparts, was required to borrow

another SWAT Team member's rifle in order to qualify at the range.  Plaintiff was similarly denied

the use and protection of a rifle when responding to SWAT calls.

17.     Beginning in 2001 and continuing through August of 2003, Plaintiff's immediate

Supervisor repeatedly attempted to obtain authorization from the SWAT Team command for Deputy

Robertson to be issued a rifle however, such efforts were consistently rebuffed.

18..     There was no legitimate business reason for Defendants to have refused to issue a rifle

to Plaintiff upon her assignment to the SWAT Team as a Negotiator, nor was there any legitimate

business interest justifying the SWAT Team Command's repeated refusals to issue Plaintiff a rifle

following Plaintiff's repeated requests for the same, which began in 2001 and continued until her

resignation from the SWAT Team on September 10, 2003.

19.     Plaintiff was constructively removed from her position as a Negotiator for the SWAT

Team because of the disparate treatment to which she was subjected by SWAT Team Command,

which disparate treatment was based solely on Plaintiff's gender.

20.     Commencing in 1998, the Plaintiff volunteered for a position in the Explorer Post of

the Adams County Sheriff's Department.  The Explorer Post is a volunteer auxiliary association,

whose membership is comprised of persons between the ages of 15 and 21 years.  The Explorer Post

is governed by a Post Committee consisting of Adult Advisors.

21.    During Plaintiff's tenure with the Adams County Explorer Post and beginning in 1998, the Post was led by Adams County Sheriff's Department Detective Richard Willoughby, who was succeeded by Detective Gary Beach. After Detective Beach left the Explorer Post assignment, the Plaintiff and Adams County Deputy Sheriff Susan Nielsen, assumed operation of the Post in approximately 1999.

22.    From 1999 through January of 2004, Plaintiff and Deputy Nielsen act as Lead Advisors to the Post and attempted to retain the viability and success of the Adams County Sheriff's Department Explorer Post despite the Sheriff's lack of interest in the continuing viability of the Explorer program. Because the Explorer program needed more Adult Advisors, the Plaintiff and Deputy Nielsen attempted to recruit other employees of the Adams County Sheriff's Department to assist in the mentoring of the members of the Explorer Post. One of the co-employees that was recruited by the Plaintiff and Deputy Nielsen was then-Deputy Sheriff Lou Dixon.

23.    The Operations Manual of the Adams County Sheriff's Department in effect during Plaintiff's assignment to the Explorer Post stated in pertinent part the following:

> 207.10 Explorer Post Organization and Structure.
> The Adams County Sheriff's Office Law Enforcement Explorer Post 45 is a professional law enforcement orientation program established to provide law enforcement training, education, and experiences for citizens between 15 and 21 years of age. The Sheriff's Office provides an environment that is intended to foster the ideals, knowledge and philosophy of the law enforcement profession among interested young people and to provide service to the Sheriff's Office and community. The Post is a self-governing body **overseen and counseled by a committee of volunteer Adult Advisors**. The Sheriff is the Chief Executive Officer and all personnel shall be subject to his rules, policies, and procedures. *(emphasis added)*

207.11 Oversight Authority for the Explorer Post.
The Sheriff has designated Explorer Post 45 to be under the authority of the Administrative Services Division.  The Commander of the Administrative Services Division shall oversee the role of the Adult Advisors and act as a liaison of the Post.  **He** shall assist the adult leadership of the Post in accomplishing those tasks and functions that **may be directed by the Sheriff** and shall report directly to the Sheriff on all matters of the Post.  *(emphases added)*

207.14 Explorer Post Command Structure.
The Post shall be structured after the chain of command of the Sheriff's Office to familiarize the Explorers with the paramilitary structure of a law enforcement agency.  The chain of command flows from the lowest rank/position upward to the top rank/position.  The Post command shall be, in part, responsible for the efficient operation of the Post.  **The Sheriff** upon recommendation **shall appoint all Post command personnel** by Post Committee.  *(emphases added)*

24.     Deputy Lou Dixon and the Plaintiff both applied and participated in the "Sergeants Promotional Process" which was announced on February 20, 2003.   The closing date for consideration was March 7, 2003.

25.     The minimum requirements for the Sergeants position announced on February 20, 2003 included completion of five years of law enforcement at the level of Deputy Sheriff and four years additional law enforcement experience.

26.     The selection process for the position consisted of five phases: 1)  Internal Affairs Review; 2)  Supervisor Review; 3)  Written Examination; 4)  Formal Interview; and 5)  Final Interview.  The Plaintiff and Deputy Dixon both met the minimum qualifications and successfully proceeded through the entire testing process.

27.     The panelists for the Examination Boards were Lieutenant Mark Nicastle (male), Lieutenant John Williams (male), and Lieutenant Gary Martin (male).

28.     Thirteen candidates completed the selection process.  Plaintiff was the only female candidate.  Upon completion of the testing process, the Plaintiff was ranked 11th out of 13.  On October 17, 2003, Deputy Dixon was promoted to the position of Sergeant.

29.     Thereafter, in January of 2004, Dixon was assigned by Defendant Darr to the position of Lead Advisor to the Adams County Sheriff's Department Explorer Post and the Plaintiff and Deputy Nielsen were demoted to the positions of Associate Advisors.  During the Plaintiff's entire six year tenure with the Adams County Sheriff's Department Explorer Post prior to January of 2004, no Sergeant had ever been assigned as the Explorer Post Lead Advisor (although Detective Beach was promoted to Sergeant after his assignment as Lead Advisor to the Explorer Post).  There was no legitimate business interest served by the assignment of Sergeant Dixon to the position of Lead Advisor to the Explorer Post and the reason for such assignment and the concomitant demotion of Deputies Nielsen and Robertson from their Lead Advisor positions, was due solely to their gender.  Further, the Adams County Sheriff's Department's policies quoted above do not require that the position of Explorer Post Lead Advisor be held by an individual of supervisory rank.

30.     The Plaintiff was not selected for the position of Sergeant, notwithstanding the fact that she met all of the qualifications and indeed, exceeded the qualifications of several of the male applications who were selected for said position, solely due to her gender.  There was no legitimate business purpose served as a result of the Defendants' refusal to promote the Plaintiff to the Sergeants position.  Indeed, the testing process was overseen by male supervisors, controlled by male supervisors, reviewed by male supervisors and was administered in such a fashion so as to allow completely subjective components governed by the male supervisors conducting the testing process,

to control the ultimate outcome of the testing process and thus, the rank order in which the applicants would appear on the eligibility list.

31.     One or more of the panelists selected by the Defendant Sheriff to administer the testing process were and are individuals whom female employees of the Adams County Sheriff's Department perceive as maintaining a sex-based bias and Defendant Sheriff, upon information and belief, was aware of the anti-female bias of one or more of these individuals prior to assigning him to participate as a panelist in the promotional testing process.

32.     In the Sergeants testing process, the Plaintiff's file reflected no adverse Internal Affairs entries and Plaintiff scored 72 points out of 100 on the written examination.  The highest score awarded to any applicant on the "Written Examination" component of the testing process was 84.

Plaintiff's "Supervisor Interview" resulted in an "outstanding" recommendation by her immediate Supervisor and a rating of 97 out of 100 points.

Scores awarded by the two Adams County Sheriff's Department representatives on the "Final Interview" panel resulted in Plaintiff being ranked 11 out of 13 on the Sergeants promotion list. Specifically, while Commander Gary Martin of the Arapahoe County Sheriff's Department awarded the Plaintiff a score of 91 based on her performance during the oral examination process, Lieutenant Williams and particularly Lieutenant Nicastle, the two internal representatives of the Adams County Sheriff's Department on the oral board, scored Plaintiff much lower, Lieutenant Nicastle giving Plaintiff a score of only 76 points for the very same interview that Plaintiff received a score of 91 from the one impartial and unbiased panelist on the oral board.

33.     The promotional testing process adopted by the Defendants was biased in favor of male employees and designed to permit entirely subjective scoring by panelists on critical components, which permitted the testing process to be manipulated in favor of male applicants. Further, Defendants specifically selected for the oral board, one or more individuals whom Defendants knew to hold a bias against female law enforcement officers, thereby ensuring that the Plaintiff would be denied a promotion to the rank of Sergeant despite the fact that she was more qualified then many of the male applicants who received promotions.

34.     Plaintiff advised Defendants of her concerns regarding the lack of objectivity in the testing process, the bias of certain of the participants in her oral interview, and of her concerns that the testing process and results thereof were indicative of an intent to discriminate against female employees based upon their gender, and the further fact that she had been a victim of such gender bias in the promotional testing process for Sergeant.  Defendants took no action in response to Plaintiff's communication of these concerns.

35.     On May 22, 2003, Defendants posted an internal job announcement for the position of Detective.  The closing date for applications was June 4, 2003.

36.     The notice posted by Defendants relating to the application process for a Detective assignment stated in pertinent part the following:

> The next three Detective openings, through attrition, will be filled on a rotating basis from the Detective Division eligibility list.  Each Deputy will be given the opportunity to be temporarily reassigned to the Detective Division for a maximum of three years.  After these three temporary positions are filled, any further openings will be for core Detective positions.  When a core position becomes available, the Detective Division Commander will select one of the Deputies in

the rotating positions.  If no core positions occur and a Deputy completes **his** *(emphasis added)* three year assignment within Detective Division, the Deputy will return to the Patrol position.

If a core position becomes available, those Deputies who successfully completed a three year rotational assignment in the Detective Division and return to the Patrol Division will be eligible for consideration along with those currently in the rotation.

37.      The selection process for the Detective position consisted of five phases: 1)  Internal Affairs Review; 2) Written Examination; 3) Written Offense Reports; 4) Supervisor Interview; and 5) Oral Board Interview.

38.      The panelists assigned by Defendant Darr to the examination Oral Board were Lieutenant John Williams (male), Lieutenant Ken Nave (male), and Lieutenant Lee Tage (male).

39.      The Plaintiff applied for the Detective position and was tested.  Once again, there were no Internal Affairs issues and Plaintiff scored a 78 on the written examination.

40.      With regard to the "Supervisor Interview" and "Oral Board Interview", once again the supervisors selected by Defendants for these processes were permitted to utilize subjective criteria, which subjective components were weighted in such a fashion so as to control the outcome of the entire testing process.  Once again, at least one Supervisor assigned to the Oral Board had a reputation within the agency of being biased against females in law enforcement and of treating female Deputies in a fashion that was disparate to the treatment of their male counterparts.  Upon information and belief, Defendant Darr was aware of the predisposition of this Supervisor and knowingly directed or approved his participation in Plaintiff's Oral Board.  Such subjective components permitted a predisposition against female applicants including but not limited to the

Plaintiff, to effect the outcome of the testing process.

41.     With regard to the "Supervisor Interview" process, Sergeants Davis and Kinear were assigned to interview Plaintiff's immediate Supervisor, Sergeant Bailey, and review Sergeant Bailey's written submissions regarding her performance. Because Sergeant Bailey had just recently submitted a Supervisory Review Letter on behalf of the Plaintiff in connection with her earlier application for the Sergeants position, Sergeant Bailey asked if the reviewers could simply use his written submission on Plaintiff's behalf that was prepared in connection with the Sergeants promotional process, rather than preparing a new one. Undersheriff Paul Siska denied Sergeant Bailey's request and in so doing stated, "No, we need to leave room for subjectivity."

42.     Sergeant Bailey provided Sergeants Davis and Kinear with exactly the same information that he had provided during the Sergeants testing process on Plaintiff's behalf and scored her a 97 out of a possible 100 points. Notwithstanding Sergeant Bailey's rating and in direct contravention of Sergeant Bailey's evaluation of Plaintiff's performance as her immediate supervisor, Sergeant Davis and Sergeant Kinear gave Plaintiff a score of 72 and 65, respectively, on the "Supervisor Interview" component of the testing process for a Detective assignment.

43.     It was later learned that Sergeant Davis changed his scoring in two of the evaluation categories by lowering them and that Sergeant Kinear lowered Plaintiff's score in six separate categories, after a comparison of Plaintiff's scores was made to the scores of male applicants. Had the score awarded to the Plaintiff on the "Supervisor Interview" component been consistent with the information provided by Sergeant Bailey and Sergeant Bailey's recommended rating of 97, Plaintiff would have received an overall rating high enough to place her in a position on the promotion list

that would have resulted in her promotion to Detective.

44.     Neither the original scores in the "Supervisor Interview" component of the Detective testing process, nor the scores as modified by Sergeant Davis and Sergeant Kinear were reflective of Plaintiff's actual performance and Sergeant Bailey's input regarding the same. Rather, Sergeant Bailey's input was ignored and the Plaintiff was awarded unjustifiably low scores on the "Supervisor Interview" component in order to prevent the Plaintiff from receiving a Detective Bureau assignment and to make the Detective assignments available to male applicants. There was no legitimate business purpose served by allowing the subjective components of the testing process to outweigh the objective components, nor was there a legitimate purpose served by the manipulation of Plaintiff's test scores in the "Supervisor Interview" portion of the testing process. Rather, the same is reflective of the pattern and practice of Defendants to discriminate against sworn female employees of the Adams County Sheriff's Department, and Plaintiff in particular.

45.     Nine candidates completed the testing process for the Detective positions. Upon completion of the selection process, the Plaintiff was ranked fifth. The top four candidates were male and the next four were female. Notably, given that there were only three Detective openings posted, only male applicants were awarded rankings that made them eligible for the Detective Bureau assignment.

46.     As with the Sergeants test, the Plaintiff communicated her concerns regarding gender bias in the testing process, as well as the subject nature of certain of the testing process components that allowed the manipulation of test scores to eliminate female applicants or ensure their placement at or near the bottom of the promotional list. Once again, no meaningful action was taken by

Defendants to respond to Plaintiff's concerns.

47.     On October 3, 2003, Defendants posted an announcement for the position of Public Information Officer (PIO).  The closing date for application was October 10, 2003.  The Plaintiff submitted an application for consideration in a timely fashion.  There were eight applicants for the position.  The Plaintiff was the only female candidate.  The selection process consisted of multiple phases.  The initial phase consisted of a written test wherein applicants were given an assignment to generate a "spontaneous press release from provided information".

48.     The written assignments prepared in connection with the application process for the position of PIO were reviewed by three male Captains.  Five of the eight original candidates were allowed to progress to the next step of the process.  The Plaintiff was not one of the five candidates allowed to proceed.

Defendants have alleged that the Plaintiff was eliminated from consideration based upon her poor writing style and grammar.  To the contrary Plaintiff, in preparation for the test, reviewed press releases issued by former Public Information Officers and adapted her style to conform to the expected style previously sanctioned and adopted by Defendants.

Plaintiff had consistently (until raising her concerns regarding gender bias and discrimination) been rated as Satisfactory or better with respect to her report and other writing skills.  Indeed, the Plaintiff was assigned Field Training Officer responsibilities by Defendants which required her to train new Patrol Deputies in report writing.

49.     Of the five applicants allowed to complete the application process for the position of Public Information Officer for the Adams County Sheriff's Department, all were male.  The

interview panel consisted of Captain Craig Coleman (male), Lieutenant Mike Macintosh (male) and Lieutenant Clint Tweedon (male). As in the previous testing process, at least one member assigned to the interview panel was reported to harbor a bias against women in law enforcement, which predisposition, upon information and belief, was known to Sheriff Darr at the time the individual was assigned to the interview panel.

50.    Defendants claim that alleged deficiencies in the Plaintiff's writing style and grammar eliminated her from consideration as a candidate for the PIO position was both false and pretextual. Prior to Defendants' elimination of the Plaintiff from consideration as an applicant for the Public Information Officer position, Plaintiff had never received any notification, counseling, reprimand or expression of concern regarding her report writing abilities. Indeed, criticism of Plaintiff's report writing skills only arose after Plaintiff began challenging the Defendants' promotional practices and complaining of institutionalized gender bias within the Adams County Sheriff's Department.

51.    Plaintiff filed requests under the Colorado Open Records Act seeking, among other things, documentation relating to her participation in the Sergeants, Detective and Public Information Officer testing processes. Defendants denied her request and refused to provide Plaintiff copies of any documents generated in connection with the testing processes in which she engaged. Notwithstanding a statutory requirement that Defendants provide a written explanation setting forth the legal basis upon which Defendants relied for withholding production of the documents at issue, the Defendants failed to do so.

52.    Female employees of the Adams County Sheriff's Department including the Plaintiff are routinely subjected to disparate treatment based upon their gender. Female employees are held

to higher and different performance standards than their male counterparts. Female employees are routinely subjected to disciplinary action as a result of conduct identical to that engaged in by male employees with no or lesser disciplinary consequence. Female Deputies are routinely denied training opportunities offered to male Deputies. Further, Defendants routinely ignore complaints and grievances and expressions of concern regarding gender bias as well as discriminatory and retaliatory treatment, or direct that superficial investigations of such complaints be conducted which are designed to ensure that the complaints are either minimized or deemed to be meritless. Highly qualified and experienced sworn female employees are routinely dissuaded from applying for supervisory positions or desirable assignments.

53.      In 2003, prior to her initiation of the complaints/grievances regarding the promotional processes more particularly described above, Plaintiff received an Outstanding Letter of Recommendation from Captain Coleman in connection with a promotional application. When Plaintiff continued to participate in the promotional processes available to her through the Adams County Sheriff's Department in 2004, Captain Coleman wrote a letter that was highly critical of the Plaintiff and recommended that she not be promoted. Plaintiff's performance in no way changed or deteriorated between Captain Coleman's original Outstanding Letter of Recommendation in 2003 and his highly critical letter of 2004. Indeed, the only change in circumstance was the Plaintiff's initiation of  grievance/complaint procedures regarding denials of promotional opportunity. Coleman's change of position regarding Deputy Robertson's ability to perform satisfactorily as a Supervisor was in retaliation for to Plaintiff's complaints of discrimination, gender bias and disparate treatment and her challenges to the promotional testing process.

54.     Plaintiff filed a formal grievance regarding Captain Coleman's 2004 letter recommending that she be denied promotional opportunities. Captain Coleman's critical letter of 2004 was directed to be removed from the Plaintiff's personnel file and replaced with a more appropriate and factually accurate letter. Rather than simply repeating his highly complimentary promotional recommendation of 2003, Captain Coleman replaced his highly critical memorandum with one that, at best, can be construed as neutral.

55.     As noted above, Plaintiff submitted a Colorado Open Records Act request to the Adams County Sheriff's Department and to Defendants' Department of Human Resources seeking documentation regarding the testing processes in which she engaged as well as a copy of her personnel file. While Plaintiff was provided by Defendants' Director of Human Resources with a copy of what was purported to be her entire personnel file, several of the grievances that she filed in connection with the above-referenced matters were not included in the file copy that was produced, nor was Captain Coleman's revised 2004 "Letter of Recommendation" or Deputy Robertson's original grievance regarding Captain Coleman's 2004 letter. Further, written interviews that were conducted with regard to Plaintiff's application for an assignment to the North Metro Drug Task Force were removed from her file, as was any record of a claim by Plaintiff's Sergeant at the time, that the individuals who conducted the "Supervisory Interview" process in connection with that assignment application had falsely reported that he had given Plaintiff a highly derogatory evaluation when, to the contrary, the Sergeant contended that he had provided a description of her performance which reflected her as an outstanding candidate for the position. Indeed, all documentation with respect to the Sergeant's allegations and the Plaintiff's complaint regarding the same were removed

from the Plaintiff's personnel file.   Defendants have intentionally removed documents from

Plaintiff's personnel file that provide substantiating evidence regarding the disparate and

discriminatory treatment to which she has been subjected.

56.     Most recently, Plaintiff again made application for promotion to the position of

Sergeant in approximately April of 2004.   Unlike the promotional testing process in 2003 when

Plaintiff tested for Sergeant, the Plaintiff's test scores in 2004 were not subjected to manipulation

and the individuals assigned to the oral board for the 2004 Sergeants testing process were unbiased.

Thus, Plaintiff scored much higher on the promotional list than she had in 2003.   As discussed in

Paragraph 50 however, Captain Coleman attempted to ensure that Plaintiff would not be ranked high

enough on the Sergeants list to actually be promoted by falsely reporting alleged performance

deficiencies and by recommending that the Plaintiff be denied the promotion.   After Captain

Coleman's letter was ordered to be withdrawn and expunged as the result of yet another grievance

by Plaintiff, Plaintiff was ranked third on the promotion list out of the approximately 14 employees

who successfully completed the testing process.

57.     Notwithstanding Plaintiff's third place ranking however, Defendants ignored

Plaintiff's ranking on the promotional list, passed over the Plaintiff and promoted two individuals

who ranked lower on the promotional list than the Plaintiff.  Subsequently, Defendants promoted one

individual who ranked higher than the Plaintiff on the promotion list and two more individuals who

ranked lower on the Sergeants promotional list.   Thus far, one individual who ranked higher on the

Sergeants list and <u>four individuals who ranked lower</u> than the Plaintiff on the Sergeants promotional

list have been promoted.  Two of those individuals are female.

58.      Defendants' refusal to promote Plaintiff to the position of Sergeant for which she successfully tested in 2004, was in retaliation for Plaintiff's initiation of multiple grievances regarding Defendants' discriminatory practices regarding Defendants' refusal to promote her, and in retaliation for Plaintiff's filing of a formal Charge of Discrimination with the CCRD.

59.      After Plaintiff was passed over for promotion and two employees who ranked lower than Plaintiff on the promotion list were promoted, Plaintiff sought and was granted a meeting with Defendant Darr.

60.      Defendant Darr advised Plaintiff that she was passed over for promotion notwithstanding her excellent test scores (which included a writing exercise and report writing review) due to allegedly "poor writing skills".  Plaintiff advised Defendant Darr that her writing skills had never been the subject of any counseling, discipline, retraining or criticism in the past and reminded Defendant Darr that she had actually been assigned to teach writing skills to recruits as a Field Training Officer.  Defendant Darr responded, "[t]hat was under a different administration".

61.      Contrary to Defendant Darr's explanation however, Plaintiff is still a Field Training Officer for the Adams County Sheriff's Department under Darr's administration and Plaintiff was recently assigned the responsibility of writing the "Civil F.T.O. Training Manual" facts which belie Defendant Darr's alleged concerns regarding Plaintiff's writing skills.

62.      On January 12, 2005 Plaintiff, while on duty, slipped on ice and injured her right knee. From January 12th through January 24th she was in experiencing pain and swelling in the knee and on January 24, 2005, after speaking with her Sergeant (Sergeant Totten), she went to the County's worker's compensation doctor, who placed her on light duty and ordered an MRI.  On

January 25, 2005, Deputy Robertson met with a representative of the Human Resources Department,

Carla Kelly and gave Ms. Kelly her medical paperwork.

63.     Ms. Robertson was then assigned to work light duty in the Civil Division.  Deputy

Carol Meaney was already working light duty in the Civil Division as she had broken her ankle at

work several weeks prior.

64.     On her first day of light duty, Plaintiff propped her knee up on a chair while seated

at her desk in order to place an ice pack on her knee as instructed by the worker's compensation

doctor.  Within a day or two, Deputy Robertson was at the front desk with Deputy Meaney when

Sergeant Totten indicated that he needed to speak with her.  Sergeant Totten stated that he had "just

gotten out of a meeting with Captain Coleman" and the Captain said "he wanted Deputy Robertson

working in the back area" and Deputy Meaney working at the front desk.  Sergeant Totten explained

that "the Captain didn't think it looked good for Deputy Robertson to be in view of the public with

her leg propped up and ice on it".  Deputy Meaney responded, "I have had my leg propped up for

weeks out here and nothing was ever said to me".  Defendants imposed this work restriction to

harass the Plaintiff in retaliation for Plaintiff's filing of gender bias complaints and her pursuit of a

Charge of Discrimination with the CCRD.

65.     Despite the fact that Deputy Meaney was not required to keep a written log of her

activities while assigned to the Civil Division on light duty prior to Deputy Robertson being assigned

there, both Deputy Meaney and Deputy Robertson were ordered by Sergeant Totten at Captain

Coleman's direction, to keep written logs of everything they did in the office, minute by minute,

including the number of phone calls taken and how many people they had contact with at the front

desk. This additional work requirement was imposed only after Ms. Robertson was assigned to light duty status by the worker's compensation doctor, lacks any legitimate business purpose and was imposed solely to harass the Plaintiff in retaliation for Deputy Robertson's participation in the Adams County Sheriff's Department grievance process and her filing of a Charge of Discrimination with the Colorado Civil Rights Division.

66.    Deputy Meaney and Deputy Robertson worked out a methodology by virtue of which they could maintain such a written log an distinguish between calls taken and citizens assisted, while at the same time identifying which of them performed the functions described. Deputy Meaney was using black and red ink and Deputy Robertson was using black and purple ink. Sergeant Totten, following a meeting with Captain Coleman, contacted Deputies Meaney and Robertson and ordered them "not to use purple ink anymore on the written log." When Sergeant Totten was asked, "[w]hat about red ink?", he made it clear that Captain Coleman's only concern was with Deputy Robertson's entries in purple ink.

Sergeant Totten also advised Deputies Meaney and Robertson that the Captain required that there be no more than a 10 minute lapse of time on the activity logs, to which Deputy Meaney responded, "I never had to do this before, what's the deal?" Rather than responding to Deputy Meaney, Sergeant Totten directed Deputy Robertson to come into his office. In Sergeant Totten's office, he began the conversation by stating, "[j]ust bear with me". Deputy Robertson asked why the Captain was suddenly so concerned that individuals assigned to light duty in the Civil Division were kept busy and were required to keep a record of their activities when this had never been a requirement prior to her assignment there. Sergeant Totten did not respond. Instead, Sergeant

Totten said that "the Captain asked me what I thought of you".

There was no legitimate business purpose for rejecting Deputy Robertson's entries, nor was there a legitimate purpose to Captain Coleman's order that there be no more than a 10 minute lapse of time on the activity logs. These requirements were never previously imposed on other employees assigned to light duty in the Civil Division and were imposed solely in retaliation for Plain's utilization of the Adams County Sheriff's Department's grievance procedures in connection with her previously denied promotions and in retaliation for her filing of a Charge of Discrimination with the CCRD.

67.     In early February 2005, Deputy Robertson was standing at the front desk conversing with Deputy Meaney. Both of them heard Sergeant Totten speaking to an unidentified person down the hall. Both Deputy Meaney and Deputy Robertson heard Sergeant Totten state in a joking manner, "[w]ell, I guess I better go check in Cindi Robertson and make sure she's not goofing off." Deputy Meaney shook her head in disgust and asked, "[w]hat is going on...this is ridiculous." Deputy Meaney then confirmed Deputy Robertson's belief that Deputy Meaney had never been required to perform any of the new duties imposed on both she and Deputy Robertson until Deputy Robertson had been assigned to light duty in the Civil Division.

68.     A day or two later, Sergeant Totten left the Adams County Sheriff's Department with a Deputy to effectuate a service of process. This duty normally takes a significant amount of time, however Sergeant Totten returned soon after his departure. Due to his prompt return, Deputy Robertson commented to Sergeant Totten, "[t]hat was fast" and Sergeant Totten indicated that he had been ordered back to the Department by Captain Coleman. Deputy Robertson then left to use

the restroom and when she came out of the restroom, Sergeant Totten was sitting in a chair next to

her desk waiting for her. Deputy Robertson said, "[n]ow what" and Sergeant Totten responded that

Captain Coleman had ordered Deputy Robertson to immediately produce copies of all of her medical

paperwork. Indeed, Sergeant Totten related that he had been ordered to return to the Sheriff's

Department from his service of process duties simply to convey Captain Coleman's order to Deputy

Robertson. Deputy Robertson responded that she had already turned all of her medical paperwork

into Carla Kelly, of the Human Resources Department as required by County policy, to which

Sergeant Totten responded, "[w]ell, he [Captain Coleman] wants it".

Deputy Robertson asked Sergeant Totten if Captain Coleman wanted her to go home and get

the paperwork and Totten immediately called Captain Coleman and told him that Deputy Robertson

did not have the paperwork with her, but that Carla Kelly in Human Resources had copies of all of

Deputy Robertson's medical paperwork. After Sergeant Totten hung up from his conversation with

Captain Coleman, Deputy Robertson asked Sergeant Totten, "[w]hat's going on" and Sergeant

Totten responded, "I don't know, if I knew I would tell you or at least tell you that I couldn't tell

you". Notwithstanding the fact that Deputy Meaney had been on her light duty assignment for

several weeks longer than Deputy Robertson, Captain Coleman had never asked her for her medical

paperwork. There was no legitimate business purpose for Captain Coleman's order and said order

was issued solely to harass the Plaintiff in retaliation for Plaintiff's past utilization of the Adams

County Sheriff's Department grievance procedures with respect to Defendants' discriminatory

practices and Defendants' refusal to promote her. Captain Coleman's order was further issued in

retaliation for Plaintiff's filing of a Charge of Discrimination against the Adams County Sheriff's

Department.

69.     Deputy Robertson expressed a concern to Sergeant Totten that she had been spoken to more by Sergeant Totten in the preceding few days about extremely minor issues than she had been spoken to by any Sergeant about anything in many years.  Deputy Robertson advised Sergeant Totten that she was tired of being harassed and that she wanted it to stop.  Deputy Robertson told Sergeant Totten to "just let me do my job".  Within minutes, Sergeant Totten was once again in Captain Coleman's office.

70.     On Friday, February 11, 2005, Sergeant Totten told Cindi Robertson, who was wearing blue jeans and standing with Deputy Meaney that they were not allowed to wear blue jeans on Friday and ordered her to change clothes immediately.  Deputy Meaney (who did not have on jeans this Friday due to a special event that she was attending after her shift), told Sergeant Totten that she had been wearing blue jeans every Friday during her entire light duty assignment and had never been told that it was not allowed.  Notwithstanding the fact that there is a policy at the Adams County Sheriff's Department that provides that commissioned staff were not allowed to wear blue jeans on Friday but administrative and civilian staff could, Deputy Meaney confirmed that the policy had never been followed while she was on light duty.  Defendants' practice had been to allow individuals assigned to light duty to wear blue jeans on Fridays, given that employees on light duty were not acting as "commissioned staff" but were rather performing administrative functions.  There was no legitimate purpose for Defendants to alter that practice and require Plaintiff Robertson and Deputy Meaney to discontinue their previously approved practice of wearing blue jeans on Friday.  Rather, this change in practice stemmed solely from a desire to harass Plaintiff Robertson and

retaliate against her for pursuit of grievances under the Adams County Sheriff's Department's policies and in retaliation for her filing of a Charge of Discrimination against Defendants with the CCRD.

71.     During the period of Plaintiff's light duty assignment, additional Sergeants positions became available to be filled from the Sergeants list in which Plaintiff was ranked third. Three other individuals on the Sergeants list (two of whom ranked lower on the list than the Plaintiff) were promoted.

72.     Once again, Plaintiff requested and was granted a meeting with Defendant Darr to get an explanation as to why she was once again passed over for promotion, notwithstanding her high ranking on the promotion list.

73.     At the time of this second meeting, Defendant Darr was aware of the fact that Plaintiff had already enrolled in courses to improve her writing skills. Because his earlier pretextual excuse for denying Plaintiff promotions was about to be addressed through additional training and eliminated, Defendant Darr gave Plaintiff a completely different explanation for why she was once again passed over for promotion. This time, Defendant Darr alleged that Plaintiff "lacked focus on her vision for the Department" and needed to improve her public speaking skills. Both of these explanations were nothing more than pretextual excuses for denying Plaintiff a promotion in retaliation for her prior grievances and her filing of a Charge of Discrimination with the CCRD.

74.     Defendants' Policies and Procedures purport to prohibit gender discrimination and the Defendants routinely represent to Plaintiff and other female employees that they are committed to providing a work environment that is free of discrimination. Further, Defendants purport to hire

and promote individuals solely on the basis of merit and their ability to perform competently. Defendants also allegedly prohibit any form of retaliation against an employee for filing a complaint regarding gender bias and Defendants promise employees of the Adams County Sheriff's Department that any reports of gender bias, discrimination and/or retaliation will be promptly investigated, and that if misconduct is found appropriate disciplinary action will follow. Defendant Darr's alleged open door policy, purportedly designed to encourage open communication between employees and management and to assist in the timely resolution of employee issues, represents yet another promise made by Defendants to employees upon which the Plaintiff and others were intended to rely.

75.     Defendants have consistently violated their own policies and breached their promises to Plaintiff and other female employees of the Sheriff's Department  by creating and perpetuating a work environment hostile to female employees, by refusing to investigate Plaintiffs' and others' claims of gender bias and gender-based discrimination, by failing to take appropriate action in response to Plaintiff's complaints and the complaints of the other female deputies, by destroying and/or concealing documentary evidence contained or which should have been contained in Plaintiff's personnel file and by their harassment of and retaliation against the Plaintiff for having raised her concerns and complaints regarding gender bias and gender-based discrimination.

76.     From July 2003 to the present, Plaintiff has suffered and will continue to suffer severe emotional distress as the result of the gender bias, gender-based discrimination, retaliation and breech by Defendants of their own Policies and Procedures.  She has experienced episodes of extreme stress resulting in physical illness, chest pains, headaches, insomnia, anger, shame,

depression, inability to interact normally with family and friends, and personal and professional humiliation.

77.     As the direct and proximate result of the foregoing unlawful and discriminatory conduct by Defendants, Robertson has suffered and will continue to suffer monetary damages in the form of lost wages and benefits, lost earnings capacity and lost future wages and benefits, and emotional distress.

### FIRST CLAIM FOR RELIEF
**(Discrimination in Employment on the Basis of Gender under Title VII)**

78.     Robertson hereby incorporates by reference and adopts paragraphs 1 through 77 above as if fully set forth herein.

79.     Robertson is a member of a protected class, to-wit: female.

80.     Defendants Adams County and Darr, through their officers, agents, supervisors and employees, knowingly and intentionally discriminated against Robertson due to her gender by subjecting her to disparate treatment, unwarranted and false criticism, and by denying her promotional and assignment opportunities to which she was otherwise entitled, solely on the basis of her gender.  Further, Defendants have refused to protect Robertson from discrimination and harassment and have engaged in other unlawful and discriminatory conduct with respect to her compensation, terms, conditions and privileges of employment including but not limited to: promotional opportunities, assignment opportunities, training opportunities and the like due to her gender, in violation of Title VII.

81.     Defendant Adams County and Sheriff Darr, through their agents and employees, did

harass and discriminate against Robertson with malice and/or with reckless indifference to the right of Robertson to be free from such intentional gender discrimination.

82.     The harassment and discrimination more particularly described above was severe and pervasive and unreasonably interfered with Robertson's work performance, her promotional opportunities, her present and future entitlement to wages and benefits, and created a hostile work environment.

83.     Defendants knew or should have known of the harassment and discrimination to which Robertson was subjected and failed to implement prompt and appropriate corrective action in response to Robertson's complaints.

84.     The Defendants have engaged in a repeated and continuing practice of discrimination based upon gender and harassment against Robertson from 2001 to the present.

85.     As a direct and proximate result of Defendants' willful and intentional discriminatory and retaliatory actions and conduct, Robertson has suffered and will continue to suffer those damages described in paragraphs 73 and 74 above.

## SECOND CLAIM FOR RELIEF
### (Violation of Civil Rights And Unlawful Retaliation under Title 42 U.S.C. § 1983)

86.     Robertson hereby incorporates by reference and adopts paragraphs 1 through 85 above as if fully set forth herein.

87.     The actions of the Defendants in discriminating against the Plaintiff due to her gender, subjecting her to disparate treatment and subsequently retaliating against her for filing internal grievances complaining of such discrimination and disparate treatment and further retaliating

Page 29 of 32

against the Plaintiff for her filing of a Charge of Discrimination with the CCRD were undertaken under color of law and within the course and scope of Defendant Darr's employment as the final policy maker for the Adams County Sheriff's Department.

88.     The actions of the Defendants in discriminating against the Plaintiff, subjecting her to disparate treatment and retaliating against the Plaintiff as more particularly described above, constitute a custom and policy of Adams County in as much as the individuals engaging in, ratifying and/or acquiescing to the repeated violations of Plaintiff's Constitutional rights to be free from discrimination based upon gender and free from acts of retaliation in response to her efforts to seek redress for the repeated violations of her Constitutional rights were undertaken by individuals with final policymaking authority for both Adams County and the Adams County Sheriff's Department. Further, Defendants have developed and maintained a custom and practice rising to the level of a defacto policy of gender bias within the Adams County Sheriff's Department.

Defendants have engaged in a repeated practice and custom of subjecting female employees, including the Plaintiff, to disparate treatment due to their gender and Defendants have adopted a custom practice and defacto policy of retaliating against female employees including the Plaintiff, who initiate complaints, grievances or Charges of Discrimination based upon Defendants unconstitutional acts.

89.     The aforesaid policies, customs, practices and usages of the Defendants as more particularly described above are violative of Plaintiff's Constitutional right to be free from discrimination based upon her gender, to be free from retaliation for her pursuit of complaints alleging gender bias and employment discrimination and to be free from being treated less favorably

Page 30 of 32

than male employees of the Adams County Sheriff's Department because of her sex.

90.     Defendants' discrimination against Plaintiff based upon her gender, their disparate treatment of the Plaintiff by failing to provide her with the same promotional opportunities, compensation, terms, conditions and privileges of employment as those provided to male employees and Defendants' retaliation against the Plaintiff in response to her complaints of gender bias and the filing of a Charge of Discrimination with the CCRD have caused the Plaintiff to suffer injury, damages and losses including but not limited to: severe emotional distress, episodes of extreme stress resulting in physical illness, chest pains, headaches, insomnia, anger, shame, depression, inability to interact normally with friends and family, and personal and professional humiliation. Defendants violation of Plaintiff's Constitutional rights to be free from discrimination based upon gender, disparate treatment and retaliation as more particularly described above, has caused Plaintiff to suffer monetary damages in the form of lost wages and benefits, lost earning capacity and lost future wages and benefits all in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants and in her favor and that the Court enter an Order awarding the following relief:

A.     Economic damages for lost wages and benefits, lost earning capacity, future wages and benefits;

B.     Compensation for emotional distress, reputational injury, humiliation and physical suffering;

C.     Reasonable attorney fees and costs, including expert fees;

D.      Pre-judgment and post-judgment interest as provided by law;

E.      Injunctive relief enjoining the Defendants from any further violations of Title

VII and awarding Robertson the assignments and promotions which she was

discriminatorily denied; and

F.      Such other and further relief as the Court deems just and proper.


PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

DATED this _____7ᵀᴴ_____ day of November, 2005.

Respectfully submitted,

BRUNO, BRUNO & COLIN, P.C.


**Plaintiff's Address:**
5480 West 115ᵗʰ Avenue
Westminster, Colorado 80020

/s/ Marc F. Colin
Marc F. Colin
1560 Broadway, Suite 1099
Denver, Colorado 80202-5143
Telephone: (303) 831-1099
*Counsel for Plaintiff Cynthia Robertson*


/s/ Jeffrey J. Clayton
Jeffrey J. Clayton
1560 Broadway, Suite 1099
Denver, Colorado 80202-5143
Telephone: (303) 831-1099
*Counsel for Plaintiff Cynthia Robertson*